***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
2. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all times relevant to these proceedings.
3. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
4. Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer at all times relevant to these proceedings.
5. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of his employment with Defendant-Employer on May 9, 2006 to his left lower leg.
6. An employment relationship existed between the parties on May 9, 2006.
7. Plaintiff's average weekly wage at all times relevant to these proceedings was $340.00, yielding a compensation rate of $226.67.
8. Dr. Thomas Charles Friedrich and Dr. William Hodges Davis are the treating physicians of Plaintiff in connection with this workers' compensation claim.
9. The parties certify that all pre-trial discovery is complete, and all relevant documents exchanged.
10. The parties participated in a mediation on January 3, 2008, which resulted in an impasse.
11. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits: *Page 3 
 a. Stipulated Exhibit One (1) — Pre-trial Agreement;
 b. Stipulated Exhibit Two (2) — Plaintiff's medical records, North Carolina Industrial Commission forms and filings, and discovery responses;
 c. Stipulated Exhibit Three (3) — Plaintiff's personnel and wage records.
12. The Deputy Commissioner admitted the following documents into evidence without objection:
 a. Plaintiff's Exhibit One (1) — Photographs of Plaintiff's left ankle;
 b. Plaintiff's Exhibit Two (2) — Plaintiff's employment search records;
 c. Plaintiff's Exhibit Three (3) — Documents from the Employment Security Commission of North Carolina, Unemployment Insurance Division, pertaining to Plaintiff's unemployment claim;
 d. Defendants' Exhibit One (1) — Documents from the Employment Security Commission of North Carolina, Unemployment Insurance Division, pertaining to Plaintiff's unemployment claim.
 *********** ISSUES
The issues to be determined are:
1. Whether and to what compensation is Plaintiff currently entitled?
2. Whether Defendants should be sanctioned for failure to authorize Dr. William Hodges Davis as Plaintiff's authorized treating physician?
3. Whether Defendants are entitled to reimbursement or a credit of one-half (½) of the mediator's fee for the mediation conducted on January 3, 2008?
 *********** *Page 4 
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following: FINDINGS OF FACT
1. Plaintiff is 33 years old, with a date of birth of August 28, 1975. After graduating from high school, Plaintiff took courses in electronics and auto body work at South Piedmont Community College, but did not complete either of these programs. Plaintiff's previous work history includes construction work, employment through temporary agencies, and machine operator for several different types of companies.
2. Sometime in late 2005 or early 2006, Plaintiff began working for Defendant-Employer through a temporary agency as a machine operator. Because Plaintiff does not have a drivers' license, he walked to work every day, which was approximately four (4) miles, but would often be able to get a co-worker to drive him home at the end of his shift. After a few months, Defendant-Employer hired Plaintiff directly as a full-time machine operator.
3. Plaintiff's responsibilities as a machine operator included keeping the brick-making machine assigned to him running properly in order to meet the production goals expected of him. As part of his duties, Plaintiff inspected and repaired bricks, and made necessary machine adjustments via a computer. Plaintiff spent his entire eight (8) hour shift on his feet, either standing on a metal platform or climbing up and down the stairs leading up to the platform in order to lift bricks from the line to the table or to repair bricks under the machine.
4. On May 9, 2006, Plaintiff sustained a compensable work injury which Defendants admitted via a Form 60. At the time of his injury, Plaintiff had turned off the brick-making machine assigned to him and was standing astride it when a co-worker restarted the brick-making *Page 5 
machine while Plaintiff was still on it. Plaintiff's left lower leg became trapped between a stack of bricks and the fingers of the machine that held the bricks in place, causing him to fall.
5. Immediately after Plaintiff fell, he presented to the emergency department of Anson Community Hospital in Wadesboro, North Carolina. Radiology revealed a left fibula fracture with slight displacement of the distal fracture fragment and a soft tissue laceration over the area of the fracture laterally. For Plaintiff's laceration he received sutures and a dressing, and for his fracture, he received a splint and crutches. Plaintiff also obtained a referral to an orthopaedist for further treatment.
6. On May 12, 2006, Plaintiff presented to Dr. Thomas Charles Friedrich, an orthopaedist. The physical examination revealed no significant drainage but some swelling and benign abrasions over the anterior aspect of Plaintiff's left lower leg. Dr. Friedrich placed Plaintiff in a short-leg cast, prescribed Oxycodone, and restricted Plaintiff to sitting work only. Because Plaintiff's position required him to climb stairs in relatively dirty and dusty conditions, Dr. Friedrich later recommended that he not return to work.
7. Plaintiff remained out of work over the next several weeks, and then returned to work wearing a walking boot on or about June 17, 2006. Although Dr. Friedrich restricted Plaintiff's standing and lifting upon his return to work, and Defendant-Employer agreed to accommodate these restrictions by providing Plaintiff with the assistance of another employee, Plaintiff ended up performing the same job duties that he had prior to his May 9, 2006 work injury when he returned to work. Plaintiff wore the walking boot over the next few months. Plaintiff experienced difficulty in performing his job duties as fast as he could before his May 9, 2006 work injury, because he kept getting the boot caught on a conveyor line, found it difficult to walk, and had to keep his leg stretched out when squatting and bending over to repair bricks. *Page 6 
At the end of each workday, Plaintiff would consistently feel pain, numbness, tingling, and pressure in his left ankle, and he also experienced swelling.
8. On July 7, 2006, Dr. Friedrich noted that Plaintiff was "basically doing his normal job." Upon removal of the walking boot, Plaintiff's physical examination revealed that he had swelling in his left ankle, and delayed healing of the fracture. Dr. Friedrich ordered light-duty work, and use of a long air stirrup.
9. On August 15, 2006, Dr. Friedrich noted that Plaintiff was still "doing his normal job," despite his previous order for light-duty work, and that Plaintiff discontinued use of the long air stirrup in favor of the walking boot, since the stirrup irritated the fracture site. Dr. Friedrich's physical examination revealed that Plaintiff had some prominence over the lateral aspect of his left lower leg. However, Plaintiff's wound appeared to be healed; there were no signs of infection or swelling; and he had excellent range of motion. Based upon the radiology results, Dr. Friedrich discontinued Plaintiff's use of the walking boot and formally cleared him to return to regular duty work. On December 14, 2006, Dr. Friedrich completed a Workers' Compensation Medical Status Questionnaire form in which he opined that Plaintiff was at maximum medical improvement, and had a zero (0) percent permanent partial disability rating to his left leg. Dr. Friedrich further stated that Plaintiff could return to the position described in the attached job description, which was his original machine operator position.
10. From August 15, 2006 through March 27, 2007, Plaintiff continued to work full-duty as a machine operator with Defendant-Employer. During this time period, Plaintiff continued to have pain, swelling, and numbness in his left lower leg and ankle, especially after a few hours on the job standing. By the end of the workday, Plaintiff's left ankle would be so swollen and would feel like it had so much pressure on it that he needed to soak it nightly. *Page 7 
11. Plaintiff informed his supervisor, Mr. Gregory Scott Wilson, of his continued left lower leg and ankle pain following his release to full-duty work. However, Plaintiff never informed anyone at Defendant-Employer that he could not perform his job duties as a result of the pain and swelling. After his release to full-duty work, Plaintiff felt that Mr. Wilson was singling him out and demanding more production from him.
12. Mr. Joseph Wayne High, Jr., a lead worker over machine operators other than Plaintiff, testified that he would see Plaintiff on occasion during the changing of shifts. Mr. High also saw Plaintiff when Plaintiff would come in early in order to help other machine operators. During these occasions, Mr. High noticed that Plaintiff was limping and Plaintiff reported left lower leg and ankle soreness to him. Plaintiff never related to Mr. High that he was unable to perform his job duties due his left lower leg and ankle complaints.
13. On March 26, 2007 and March 27, 2007, Plaintiff requested and received from Mr. Wilson permission to work overtime. March 27, 2007 was the last day Plaintiff worked for Defendant-Employer. Plaintiff testified that he resigned his employment with Defendant-Employer because he could no longer tolerate the increasing pain in his left lower leg and ankle.
14. Defendant-Employer contends, however, that Plaintiff resigned his employment because of his resentment over another co-worker receiving a promotion which Plaintiff thought he deserved. Plaintiff denied this allegation, explaining that the co-worker at issue received this promotion sometime during the initial time period in which he remained out of work for his May 9, 2006 work injury. Mr. Wilson corroborated Plaintiff's testimony concerning the timing of the co-worker's promotion, and admitted that the only thing that changed about this co-worker's position was the shift on which he worked. The Full Commission gives little weight to Mr. Wilson's testimony concerning Plaintiff's motivation for resigning his employment with *Page 8 
Defendant-Employer, and finds that there is insufficient evidence that Plaintiff resigned his employment due to any feelings of resentment or ill will over another co-worker receiving a promotion which he thought he deserved. There is also insufficient evidence to establish that Plaintiff's resignation from his employment with Defendant-Employer was because he could no longer tolerate the pain related to his May 9, 2006 work injury. The Full Commission finds as fact, however, that Plaintiff continued to suffer from pain and swelling of the left leg and ankle at the time of his resignation.
15. Shortly after Plaintiff resigned from his employment, he submitted an application for employment with the same temporary agency through which he initially began working with Defendant-Employer. Through the temporary agency, Defendant-Employer offered Plaintiff another machine operator position on the same shift and at the same rate of pay. Plaintiff did not recall actually speaking to Mr. Wilson concerning the new position, but rather to a woman named Pat at the temporary agency. Plaintiff accepted the position, but was unable to begin work at the specific time and date Defendant-Employer expected him to appear due to an unrelated, mandatory court appearance. Plaintiff did go to Pat's office on the day that he was to begin work once court was in recess, which was sometime after 11:00 a.m., in order to begin filling out the paperwork for the new position. However when he arrived, Pat informed him that Defendant-Employer gave the position to someone else. Plaintiff had reasonable excuse for his delay in appearing to complete the application process at Defendant-Employer's premises for the job through the temporary agency. Therefore, the greater weight of the evidence does not establish that Plaintiff refused an offer of suitable employment with respect to the job offer through the temporary agency. *Page 9 
16. On April 13, 2007, Plaintiff presented to Dr. William Hodges Davis, an orthopaedist specializing in foot and ankle disorders, for a second opinion evaluation of his continued left lower leg and ankle complaints. Plaintiff reported to Dr. Davis continued numbness and pain over the fracture site, some "intermittent area neuritic type symptoms on the medial side," and most significantly, persistent pain and swelling in his anterior ankle which worsened over the course of the day, especially with squatting. Dr. Davis's physical examination of Plaintiff confirmed swelling of the left lower leg compared to the right, tenderness over the antero-lateral ankle joint and the open area over the junction of the distal and middle area of the fibula, and a positive Tinel's sign. Dr. Davis recommended that Plaintiff undergo magnetic resonance imaging (MRI) of his left ankle in order to determine whether he had a persistent anterior impingement versus a subtle syndesmotic instability, and on April 13, 2007 he wrote Plaintiff completely out of work until he could review the results of the MRI.
17. On May 29, 2007, Dr. Davis amended his recommendations from the April 13, 2007 evaluation of Plaintiff without seeing him. Dr. Davis wrote that "[a]t this point, if nothing is done, I think Mr. Byrd has reached maximum medical improvement . . . and that further work-up needs to be completed in order to determine exactly what the etiology of his pain is." Dr. Davis still suspected that the most likely source of Plaintiff's pain was either anterior impingement or a persistent, subtle syndesmotic instability, and that an MRI would assist in helping to sort out these diagnostic issues. Dr. Davis assigned a 20 percent permanent partial disability rating to Plaintiff's left foot due to loss of motion of his ankle, sub-talar, and mid-tarsal joints, and gave work restrictions including no standing for more than four (4) hours in an eight (8)-hour workday, no climbing ladders, no lifting over 50 pounds, and the use of an orthotic shoe. Given the nature of Plaintiff's job duties with Defendant-Employer, these work *Page 10 
restrictions would have precluded him from performing his job as a machine operator for Defendant-Employer. Based upon Defendant-Employer's previous failure to provide light duty work for Plaintiff, the Full Commission finds that light duty work would not have been available for Plaintiff with Defendant-Employer had he not resigned. Dr. Davis also continued to keep Plaintiff completely out of work pending the MRI.
18. On August 22, 2007, Dr. Friedrich completed another Workers' Compensation Medical Status Questionnaire form in which he opined that Plaintiff's fracture had healed and that Plaintiff required no future medical treatment. Dr. Friedrich felt Plaintiff was still at maximum medical improvement, and he still agreed with his previous zero (0) percent permanent partial disability rating. Dr. Friedrich further opined that Plaintiff was not a surgical candidate with respect to his May 9, 2006 work injury.
19. On October 3, 2007, Plaintiff finally underwent the MRI ordered by Dr. Davis on April 13, 2007, which revealed an abnormality in the left peroneous brevis muscle centered around the myo-tendinous junction that "may be the result of a strain-type injury." On December 5, 2007, Plaintiff presented to Dr. Davis in order to review the results of the October 3, 2007 MRI, which Dr. Davis interpreted as demonstrating "a little anterior impingement but generally some peroneal changes." Overall, Dr. Davis concluded that Plaintiff "appears to be better." Plaintiff relayed to Dr. Davis his concerns that the work restrictions he assigned on April 13, 2007 were going to present problems with him obtaining employment. In response to these concerns, Dr. Davis wrote a note allowing Plaintiff to return to work full-duty and without restrictions as of December 6, 2007.
20. On February 13, 2008, Plaintiff saw Dr. Davis for a final visit. Dr. Davis noted that Plaintiff "continues to have some soreness in his anterior ankle, but at this point, I do not *Page 11 
believe that Mr. Byrd is bad enough to require surgery and he agrees." Dr. Davis opined that Plaintiff was at maximum medical improvement, assigned him an 11 percent permanent partial disability rating to his left foot due to the stiffness in his left ankle and sub-talar joint, and again released him to full-duty work.
21. Subsequent to Plaintiff's February 2008 visit to Dr. Davis, he performed some moving work with Home Run Movers, for which he received $130.00 for a day's work. Plaintiff testified that after he did this work for Home Run Movers, someone from the company informed him that they would contact him the next time that they had a moving job in the area. The Full Commission finds, based upon the greater weight of the evidence, that the wages Plaintiff earned at Home Run Movers are not indicative of wage-earning capacity.
22. From April 2007 through January 14, 2008, Plaintiff kept a log of his efforts to find suitable employment within his restrictions. These records indicate that Plaintiff's efforts to secure suitable employment within his restrictions increased between September 3, 2007 and January 14, 2008. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff made reasonable, though unsuccessful efforts to find suitable employment within his restrictions from April 2007 through January 14, 2008.
23. At his deposition, Dr. Friedrich remained of the opinion that Plaintiff was at maximum medical improvement and had a zero (0) percent permanent partial disability rating to his left leg. Dr. Friedrich admitted that he did not evaluate the integrity of Plaintiff's peroneus muscle, although he would expect there to be some soft tissue injury in this area as a result of Plaintiff's May 9, 2006 work injury. Further, Dr. Friedrich agreed that since he did not have any further treatment to offer Plaintiff with respect to his fibula fracture, he saw no reason why Plaintiff would not benefit from treatment of his soft tissue injuries with Dr. Davis. Moreover, *Page 12 
Dr. Friedrich agreed, after reviewing Plaintiff's medical records from Dr. Davis, that Dr. Davis provided reasonable and appropriate care to Plaintiff, and that he would defer Plaintiff's current care to Dr. Davis.
24. Dr. Davis opined at his deposition that Plaintiff's continued complaints of pain and numbness over his fracture area and in his left ankle are consistent with the mechanism of injury of the May 9, 2006 work injury. Although Dr. Davis agreed that Plaintiff was physically able to walk four (4) miles per day, based upon the mechanics of his ankle, he was also of the opinion that such walking would cause Plaintiff pain and swelling, and would not be conducive to a good quality of life. When asked about the issue of future surgery for Plaintiff, Dr. Davis stated that the decision to go forward with surgery would be based upon the extent to which Plaintiff was willing to continue to endure his current level of pain and swelling, which would likely not improve without surgery. The specific procedure that Dr. Davis recommended for Plaintiff was an arthroscopy and arthroscopic debridement of the impingement lesion of Plaintiff's left ankle, which generally has a 90 percent success rate in Dr. Davis's experience. Dr. Davis opined that this surgery would be the best means to relieve Plaintiff's current symptoms of pain and swelling related to his May 9, 2006 work injury.
25. The Full Commission gives greater weight to the opinion testimony of Dr. Davis over any contrary opinions of Dr. Friedrich with respect to Plaintiff's permanent partial disability rating, permanent work restrictions, and need for future medical treatment related to his May 9, 2006 work injury, including Plaintiff's need for any future surgery. Dr. Friedrich, who is a general orthopaedist, focused his treatment primarily on Plaintiff's left fibula fracture, and testified that he saw no reason why Plaintiff would not benefit from treatment of his soft tissue injuries with Dr. Davis, that Dr. Davis provided reasonable and appropriate care to Plaintiff, and *Page 13 
that he would defer Plaintiff's current care to Dr. Davis. Dr. Davis, however, almost exclusively treats and operates on patients with foot and ankle disorders, and evaluated both Plaintiff's soft tissue and fracture-related problems in his left lower leg and ankle.
26. The Full Commission finds as fact that Plaintiff's continued complaints of pain and numbness in his left lower leg and ankle are credible, and are causally related to his May 9, 2006 work injury. The Full Commission further finds that future evaluation and treatment of Plaintiff's left lower leg and ankle complaints, including possible surgical intervention, are reasonably required in order to effect a cure, to give relief, and/or to lessen his period of disability. Dr. Davis is authorized to provide future evaluation and treatment to Plaintiff for his left lower leg and ankle complaints, including future evaluations of his need for surgical intervention. Since Plaintiff and Dr. Davis agree that surgery is not warranted at this time, Plaintiff is at maximum medical improvement and has a permanent partial disability rating to his left foot of 11 percent.
27. The Full Commission finds as fact that even though Plaintiff testified that he resigned from his employment because he was no longer physically able to perform his duties as a machine operator as of March 28, 2007, the greater weight of the evidence does not support this contention. Within a short period of time after Plaintiff's resignation, he agreed to go back to work for Defendant-Employer in the same position with the same shift, hours, and rate of pay. Therefore, Plaintiff at least believed that he was capable of working. As of March 28, 2007, none of Plaintiff's treating physicians took him out of work, and Dr. Friedrich was of the opinion that Plaintiff could work within his restrictions. Plaintiff failed to meet his burden of proving disability from March 28, 2007 through April 12, 2007, when Dr. Davis took him out of work. *Page 14 
28. On April 13, 2007, Dr. Davis wrote Plaintiff out of work pending receipt of the results of the MRI he ordered. Plaintiff was medically disabled from employment due to his May 9, 2006 work injury as of April 13, 2007. Although Plaintiff received work restrictions from Dr. Davis beginning May 29, 2007, since Dr. Davis previously wrote him out of work on April 13, 2007 pending review of the MRI, and Dr. Davis did not have an opportunity to review the results of this MRI until December 5, 2007, then Plaintiff continued to be medically disabled from any employment until Dr. Davis's release of Plaintiff back to full-duty work on December 6, 2007. Additionally, the work restrictions that Dr. Davis assigned to Plaintiff on May 29, 2007 would have precluded him from finding work with Defendant-Employer; and, Plaintiff made a reasonable but unsuccessful effort to find suitable employment even during periods when he was taken out of work by Dr. Davis. As of December 6, 2007, Dr. Davis released Plaintiff to return to work without restrictions, based upon Plaintiff's own request to have his work restrictions lifted in the hopes that this would make his employment search more successful. However, based upon the greater weight of the evidence, the Full Commission finds that Plaintiff still had physical limitations due to pain related to his May 9, 2006 work injury. Dr. Davis felt that Plaintiff would continue to have to deal with the pain related to his May 9, 2006 work injury until his inability to tolerate the pain forced him to undergo surgery.
29. Following Plaintiff's release by Dr. Davis back to full-duty work as of December 6, 2007, Plaintiff's employment search records indicate that he made reasonable efforts to secure suitable employment until January 14, 2008. Plaintiff's May 9, 2006 work injury hampered his ability to work. Thus, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff has proven that he continued to be disabled from employment from April 13, 2007 *Page 15 
through January 14, 2008, when his employment search records ended. Plaintiff has not proven that he was disabled from employment after January 14, 2008.
30. The Full Commission finds, based upon the greater weight of the evidence, that Defendants did not defend this claim without reasonable grounds, and as such, the assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 is neither proper nor justified.
31. The Full Commission finds, based upon the greater weight of the evidence, that Defendants are entitled to reimbursement or a credit of one-half (½) of the mediator's fee for the mediation conducted on January 3, 2008.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with Defendant-Employer on May 9, 2006 to his left lower leg and ankle. N.C. Gen. Stat. § 97-2(6) (2008).
2. Plaintiff's continued complaints of pain and numbness in his left lower leg and ankle are causally related to his May 9, 2006 work injury, and future evaluation and treatment of these complaints, including future evaluations to determine the necessity for surgical intervention, are reasonably required in order to effect a cure, to give relief, and/or to lessen his period of disability. N.C. Gen. Stat. §§ 97-25;97-25.1 (2008).
3. Dr. William Hodges Davis is authorized to provide future evaluation and treatment with respect to Plaintiff's continued complaints of pain and numbness in his left lower leg and ankle related to his May 9, 2006 work injury. *Page 16 
4. Since Plaintiff and Dr. Davis agree that surgery is not yet warranted as a result of his May 9, 2006 work injury, Plaintiff is at maximum medical improvement and sustained an 11 percent permanent partial disability rating to his left foot. N.C. Gen. Stat. § 97-31
(2008).
5. Plaintiff failed to meet his burden of proving disability from March 28, 2007 through April 12, 2007, as there is insufficient evidence to establish that he was completely unable to work in any type of employment at that time. Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993).
6. From April 13, 2007 through December 5, 2007, Plaintiff was medically disabled from any employment, thus satisfying prong one (1) ofRussell v. Lowes Product Distribution. Although Plaintiff received work restrictions from Dr. Davis beginning May 29, 2007, since Dr. Davis previously wrote him out of work on April 13, 2007 pending review of the MRI, and Dr. Davis was unable to obtain and review the results of this MRI until December 5, 2007, then Plaintiff continued to be medically disabled from any employment until Dr. Davis's release of Plaintiff back to full-duty work on December 5, 2007. Further, the evidence has also established that based upon past conduct, Defendant-Employer would not have had light duty work available for Plaintiff within the May 29, 2007 restrictions given by Dr. Davis and that Plaintiff made reasonable, but unsuccessful efforts to find suitable employment from April 2007 through January 14, 2008. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
7. Following Plaintiff's release by Dr. Davis to full-duty work as of December 6, 2007, Plaintiff's employment search records indicate that he continued to make reasonable, though unsuccessful efforts to secure suitable employment. Although Plaintiff was capable of working, he had physical limitations due to his level of pain and swelling resulting from his May *Page 17 
9, 2006 work injury that hampered his ability to work after December 6, 2007. Thus, Plaintiff continued to be disabled from employment from December 6, 2007 through January 14, 2008, when his employment search records ended. Plaintiff failed to meet his burden of proving disability after January 14, 2008. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
8. As a result of Plaintiff's May 9, 2006 work injury, he was temporarily and totally disabled from working and entitled to indemnity compensation at the rate of $226.67 per week from April 13, 2007 through January 14, 2008. N.C. Gen. Stat. § 97-29 (2008).
9. Defendants did not defend this claim without reasonable grounds, and as such, the assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 is neither proper nor justified. N.C. Gen. Stat. § 97-88.1
(2008).
10. Defendants are entitled to reimbursement or a credit of one-half (½) of the mediator's fee for the mediation conducted on January 3, 2008.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $226.67 per week for the period from April 13, 2007 through January 14, 2008. The accrued compensation shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's May 9, 2006 work injury, including future surgical evaluations, for so long as such *Page 18 
evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. Dr. William Hodges Davis is authorized to provide future evaluation and treatment with respect to Plaintiff's continued complaints of pain and numbness in his left lower leg and ankle related to his May 9, 2006 work injury.
4. Subject to a reasonable attorney's fee herein approved, Defendants shall pay to Plaintiff compensation at the rate of $226.67 for 15.84 weeks for the 11 percent permanent partial disability rating to his left foot in one lump sum.
5. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff above. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of the accrued compensation owed to Plaintiff.
6. Defendants shall receive reimbursement or credit for one half (1/2) of the mediator's fee.
7. Defendants shall pay the costs of these proceedings.
This the ___ day of June 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC *Page 19 
COMMISSIONER
S/_______________ DANNY LEE McDONALD COMMISSIONER *Page 1